**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ORVILLE McDONALD,<br><br>Plaintiff,<br><br>v.<br><br>MISSOURI DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | ) | No. 4:24-cv-00361-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion for summary judgment brought by Defendant Missouri Department of Corrections ("MODOC"). (ECF No. 43). Plaintiff Orville McDonald opposed the motion for summary judgment (*see* ECF Nos. 53 (unredacted), 57 (redacted)), Defendant replied (ECF No. 61), and both parties submitted supplemental briefing at the request of the Court (*see* ECF Nos. 66-69). This matter is now fully briefed and ripe for disposition. For the reasons set out below, the Court will grant Defendant's motion for summary judgment.

## I. BACKGROUND

This case involves a claim of disability discrimination brought by Plaintiff against his former employer, MODOC. Plaintiff alleged that he was terminated from his employment as a Corrections Officer at the Potosi Correctional Center due to his alleged disabilities. Plaintiff filed an amended complaint (ECF No. 25) on December 23, 2024 stating two causes of action against Defendant. In Count I, Plaintiff alleged that Defendant violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 749(a). In Count II, Plaintiff accused Defendant of violating the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010, *et seq*. On

March 5, 2025, the Court dismissed Count II of the amended complaint for failure to exhaust administrative remedies. (*see* ECF Nos. 34). Thus, only Count I, which alleges disability discrimination in violation of the Rehabilitation Act against MODOC, remains before the Court.

## II. UNDISPUTED MATERIAL FACTS

The following facts are uncontroverted, except as noted:[1]

Plaintiff began his employment with Defendant as a Corrections Officer on November 18, 2002. At some point during his employment, Plaintiff claims that he began experiencing anxiety and depression as a result of experiencing and witnessing violent incidents at work that included being assaulted by prisoners, witnessing prisoners assault each other, and discovering gravely wounded prisoners.[2] The parties agree that Plaintiff's ability to carry out certain social interactions was affected. However, despite these experiences, Plaintiff does not contend that his conditions substantially limited his major life activities of working or interacting with others. Plaintiff concedes in his supplemental briefing that though he originally alleged that he was disabled under the meaning of the Rehabilitation Act, he "abandons his assertion that his [purported disabilities] substantially limited his major life activities of working and interacting

[1] Plaintiff's amended response to Defendant's statement of facts (ECF Nos. 55, 58) directly addressed (and disputed) only Paragraph 20 of Defendant's statement of facts, in which Defendant explained that Vehicle Patrol was part of the Sally Port Gate work assignment. Moreover, the parties' briefing indicates that a large portion of the facts are not truly disputed. Because Plaintiff did not controvert any other paragraph of Defendant's initial statement of facts (ECF No. 45), they are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); Local Rule 4.01(E). The Court accepts and recites herein only the facts that are material to Plaintiff's claims and supported by the record evidence cited.

[2] Defendant denied this fact as "not material." (ECF No. 60 at p. 5). However, the Court finds this fact material in a disability discrimination case. Because Defendant failed to offer any further response or citation to the record to controvert this fact, it is deemed uncontroverted. Fed. R. Civ. P. 56(c)(1), (e)(2).

with others" and that Defendant only "mistakenly believed" that his conditions substantially limited these major life activities. (ECF No. 67 at p. 1).

**A. Plaintiff's Accommodations**

On May 3, 2022, Plaintiff submitted a request to Defendant for reasonable workplace accommodations "due to anxiety, depression, ADHD and ADD." (ECF No. 58-2). Plaintiff requested that he be permitted to maintain his assignment to the Sally Port Gate post[3] and not be pulled from that post for other assignments. The following day, Defendant granted Plaintiff's requested accommodations. In a May 4, 2022 letter to Plaintiff, Defendant stated that Plaintiff would remain assigned to the Sally Port Gate, per his request. The letter explained that based on Plaintiff having identified additional posts he was willing to work, he was also approved to be reassigned on an as-needed basis to Housing Units 4, 5, and 6, food service, recreation, medical, education, industries, property, yard officer, or out counts. The parties agree that the accommodations described in Defendant's May 4, 2022 letter were reasonable.

After Plaintiff received the letter outlining his approved work assignments, he frequently worked at the Sally Port Gate as promised. However, Plaintiff also worked at other posts from time to time based on his willingness to volunteer for other posts or staffing needs. Plaintiff states that he worked in the Control Room on two occasions, which was not on the list of pre-approved posts, though Defendant points out that on at least one occasion, Plaintiff volunteered to work at this post. Relevant to Plaintiff's claims, Plaintiff was placed on Vehicle Patrol on many occasions after his accommodations were approved. Vehicle Patrol was not explicitly

[3] The Court notes that the parties' briefing and exhibits refer to both the "Sally Port Gate" and "Sally Port Tower" as the work assignment at issue. It appears from the parties' briefing that they refer to the same post that involved monitoring ingress and egress from the gate. The discussion herein will refer to this post as the "Sally Port Gate."

mentioned in the list of approved posts in Plaintiff's accommodation letter. However, the parties disagree on whether Vehicle Patrol was actually a separate post that should have been listed or a duty that was part of the Sally Port Gate post. Defendant contends that Vehicle Patrol was a necessary duty that was part of the Sally Port Gate post and, as such, did not need to be listed in his accommodations. However, Plaintiff contends that Vehicle Patrol is a totally separate post and explains that individuals performing Vehicle Patrol were assigned to the Sally Port Gate post, but individuals stationed at the Sally Port Gate were not automatically assumed to perform Vehicle Patrol. Plaintiff takes issue with his repeated assignment to Vehicle Patrol because he alleges it violated his approved accommodations. It is of note that the Vehicle Patrol assignment was also the setting in which Plaintiff was accused of, and admitted to, making inappropriate comments to a female coworker in the Vehicle Patrol car with him that ultimately led to his termination.

**B. Plaintiff's Termination**

On December 2, 2022, Plaintiff was on Vehicle Patrol with a female Corrections Officer trainee. Plaintiff made a series of inappropriate comments to the trainee while they were in the car together. Plaintiff admits that when the trainee entered the vehicle with him, he stated, "Well if we get a candle, we can make this a date." (ECF No. 45 at p. 4 (quoting ECF No. 45-2 at p. 120)). Later, Plaintiff advised the trainee that she should tell the inmates and staff that she is in a relationship because "you're going to have some that will try to get in your pants." (*Id*. at p. 5 (quoting ECF No. 45-2 at p. 123)). While scrolling through his Facebook feed on his phone, Plaintiff showed the trainee a picture of what he described as a "big heavy set gal," and asked her to "look at the camel toe on that" and stated, "this would look better on a littler gal than it would to be this big old gal." (*Id*. (quoting ECF No. 45-2 at pp. 125-26)). The trainee reported

Plaintiff's inappropriate comments, and MODOC began an investigation on December 7, 2022. Plaintiff admitted that he made inappropriate comments. Defendant also found significant that during the investigation, Plaintiff showed investigators pictures he had found online of the trainee posing in her underwear.

After Defendant began its investigation into Plaintiff's conduct, Plaintiff raised concerns to Defendant that his work accommodations were being ignored.[4] Specifically, on April 5, 2023, Plaintiff reported that his supervisors had assigned him to posts that were not on the approved list in his accommodation letter. Defendant conducted an initial inquiry into Plaintiff's complaint and stated in a report that an upgraded investigation was recommended to determine whether a policy violation occurred. The report noted that further investigation would be needed to determine whether any policy violation had occurred because two of his assignments—Vehicle Patrol and the Control Center—were not explicitly listed in his approved accommodations.[5] Neither party specifies whether additional investigation was ever conducted, and the report notes that Plaintiff was terminated after the inquiry into his complaint had begun due to the separate investigation that substantiated his coworker's accusations.

Plaintiff was terminated from his employment with Defendant effective April 21, 2023. Defendant cited as the reason for his termination the substantiated complaint regarding Plaintiff's inappropriate conduct on December 2, 2022, which Defendant found to violate its anti-

---

[4] In his briefing in opposition to summary judgment, Plaintiff contends that he made complaints over the course of months that his accommodations were not being followed. However, the evidence Plaintiff cited refers to only one complaint, for which a request for investigation was filed on April 5, 2023. (ECF No. 58-3). Further, Plaintiff does not pursue a claim of retaliation in connection with this report or any other.

[5] Plaintiff alleges that Defendant definitively concluded that Plaintiff's accommodations were violated. (*See* ECF No. 58 at p. 3). However, Plaintiff failed to cite record evidence supporting this allegation. The report Plaintiff cited did not conclude that Plaintiff's accommodations were ignored. Defendant only concluded that further investigation was needed.

harassment policy. While Plaintiff does not dispute the veracity of the allegations leading to this finding, he argues that he was treated worse than comparable employees who received only temporary suspensions for committing similar or worse misconduct.

### C. Alleged Comparators

Plaintiff points to four other Corrections Officers whose similar—and arguably more egregious—misconduct led to only temporary suspensions and not termination.[6] They are referred to herein by their initials, as evidence related to these employees and their disciplinary records was filed under seal. First, an investigation that concluded on July 6, 2021 revealed that Corrections Officer C.O. inappropriately touched three female Corrections Officers without their consent. C.O. touched the first coworker's hips, sides, belt loop, shoulder, hair, or back every time he worked with her. He touched the shoulders of another coworker and whispered in her ear. With respect to yet a third coworker, C.O. touched her breast and hips and rubbed against her with his groin. He was given a five-day suspension. A second Corrections Officer, B.H., was suspended for three days in January 2022 after an investigation revealed that he touched four female coworkers without their permission, whispered in staff members' ears, hugged staff members, and caused them to feel uncomfortable. A third Corrections Officer, N.G., was found to have made sexually harassing comments to two female coworkers that consisted of describing sexual encounters with a previous girlfriend and providing a graphic, offensive, and explicit description of a pornographic image he saw on Facebook. He was suspended for three days in

---

[6] Plaintiff contends, and Defendant admits, that a fifth employee, T.M., was found to have committed sexually harassing behavior and received only a temporary suspension. However, because T.M. was not a Corrections Officer and Plaintiff has not offered evidence that he shared the same job responsibilities, facts related to that investigation are not material. *See Riser v. Target Corp.*, 458 F.3d 817, 822 (8th Cir. 2006) (no relevant comparison because alleged comparators did not share the same position, shift, or duties as plaintiff).

August 2020. A fourth Corrections Officer, S.F., was found to have made sexually harassing comments to a female coworker by grabbing her and bending over so his face was level with her back side and stating, "I heard you got that thang on you, I was trying to get a look." (ECF No. 58 at p. 7 (quoting ECF No. 58-16 at p. 3)). S.F. was suspended for five days in June 2021.

**D. The Parties' Arguments**

Defendant argues that the material facts are not in dispute, and MODOC is entitled to judgment as a matter of law on Plaintiff's disability discrimination claim. Defendant argues that Plaintiff cannot prevail on a disability discrimination claim under a failure to accommodate theory or a discriminatory termination theory. Defendant argues that the accommodations it provided were reasonable and complied with any obligations under the Rehabilitation Act because Plaintiff was able to perform his job responsibilities with the accommodations Defendant provided. Further, Defendant argues that Plaintiff cannot prove the prima facie elements of his discriminatory termination claim because he has failed to offer sufficient evidence that he was disabled, or regarded by MODOC as disabled, pursuant to the Rehabilitation Act. Defendant contends that even if Plaintiff could prove the prima facie elements of disability discrimination, Defendant cited a legitimate, non-discriminatory reason for terminating Plaintiff's employment when an internal investigation substantiated allegations of inappropriate conduct that violated Defendant's policies.

Plaintiff opposes summary judgment. First, Plaintiff argues that he meets the definition of disabled under the Rehabilitation Act because Defendant regarded him as disabled, though Defendant was mistaken in this alleged belief. Plaintiff alleges that he was subjected to disability discrimination because his perceived disabilities were the true reason for his termination. Though he concedes that Defendant offered a non-discriminatory reason for his

termination by citing the substantiated complaint against him, he argues that employees who did not have accommodations pursuant to the Americans with Disabilities Act ("ADA") received more favorable treatment because they were suspended, and not fired, for similar misconduct.

Defendant replies that because Plaintiff argues only that he was regarded as disabled, any claim of failure to accommodate cannot proceed. Further, Defendant argues that Plaintiff cannot prove disparate treatment by citing purported comparator evidence because Plaintiff did not establish that the alleged comparators were not disabled, and Plaintiff failed to show that they were similarly situated to him in all relevant respects. For the reasons below, the Court agrees with Defendant.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court reviews the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted). While the non-movant receives the benefit of all reasonable inferences supported by the evidence, he maintains "the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (internal citation omitted). To withstand a motion for summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). To demonstrate a triable issue of fact, the non-movant "must do more than simply show that there is

some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks and citation omitted). "The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient showing of the existence of an essential element of [his] case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1217 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

## IV. DISCUSSION

The Rehabilitation Act forbids discrimination against an "otherwise qualified individual with a disability…solely by reason of her or his disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (quoting 29 U.S.C. § 794). In the absence of direct evidence of discrimination, courts must apply the familiar burden-shifting framework set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate a claim of disability discrimination based on an allegation of disparate treatment. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016) (internal citation omitted). The burden-shifting framework is generally applied in cases of disability discrimination as follows:

> The plaintiff first has the burden of establishing a prima facie case: (1) that the plaintiff was disabled within the meaning of the [Rehabilitation Act]; (2) that the plaintiff was qualified to perform the essential functions of the job; and (3) a causal connection between an adverse employment action and the disability. The burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. Finally, the burden shifts back to the employee to show that the proffered reason was, in reality, a pretext for discrimination.

*Id*. (citing *Wenzel v. Mo.-Am. Water Co.*, 404 F.3d 1038, 1040 (8th Cir. 2005)). When reviewing relevant authority, the same basic standards and definitions apply to both the ADA and Rehabilitation Act, and thus "cases interpreting either are applicable and interchangeable." *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996). Here, Plaintiff has failed

to prove the elements of his prima facie case of disability discrimination because he cannot demonstrate that he was disabled under the meaning of the Rehabilitation Act, and he has failed to demonstrate the existence of similarly situated comparators.

**A. Plaintiff Was Not Regarded as Disabled**

Fatal to Plaintiff's Rehabilitation Act claim is that he fails to adequately demonstrate that he was disabled or regarded as disabled by his employer, precluding a claim of disability discrimination under any theory. Plaintiff asserts only that he was regarded as disabled by his employer. A plaintiff may demonstrate that he was "disabled" within the meaning of the Rehabilitation Act "if, notwithstanding the absence of an actual disability, he is perceived or 'regarded as' having an impairment that substantially limits a major life activity." *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999). To establish that a defendant employer regarded the plaintiff as disabled, the plaintiff must prove that his employer believed he possessed a disability that actually substantially limited one or more major life activities. *Id*. at 915 (citing *O'Keefe v. Varian Assocs., Inc.*, 1998 WL 417498, at *18 (N.D. Ill. 1998) ("For an employee to be disabled under this definition, it is not sufficient that an employer perceive an employee as having an impairment; the employer must regard the employee as having an impairment that substantially limits a major life activity.")). Plaintiff initially claimed in his complaint that he was disabled, as he alleged that he possessed impairments that substantially affected major life activities. However, in response to his lack of briefing on this point and failure to oppose Defendant's assertion that he was not disabled, the Court directed Plaintiff to submit supplemental briefing clarifying whether he truly intended to abandon his argument that he was disabled under the meaning of the Rehabilitation Act. (ECF No. 63). Plaintiff confirmed that he intends to abandon his argument that he possessed any actual disabilities and argues only that

Defendant *mistakenly* regarded him as disabled under the meaning of the Rehabilitation Act. (ECF No. 67).

As an initial matter, because Plaintiff has chosen to proceed only under a theory that he was regarded as disabled, and was not actually disabled, his claim that Defendant failed to provide reasonable accommodations by assigning him to unapproved posts lacks merit. Plaintiff cannot succeed on a claim of failure to accommodate without demonstrating that he was actually disabled. It is well-established in the Eighth Circuit that "an employer has no duty to accommodate an employee who is not actually disabled." *Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 n.3 (8th Cir. 2015) (citing *Duello v. Buchanan Cnty. Bd. of Supervisors*, 628 F.3d 968, 972 (8th Cir. 2010) (explaining, "'regarded as' plaintiffs are not entitled to reasonable accommodations because the ADA was not intended to grant reasonable accommodations to those who are not actually disabled.")); *see also Carlton v. Union Pac. R.R. Co.*, No. 8:23-cv-0211, 2023 WL 6388021, at *5 (D. Neb. Sept. 29, 2023) ("Because [plaintiff] has only adequately alleged that he is 'regarded as' disabled and not that he has an 'actual' or 'record of' disability…evidence on accommodations is not relevant to this case."). However, though Plaintiff relies on a theory that he was only regarded as disabled, he also has not provided any evidence establishing as much in support of his discriminatory termination theory.

Defendant argues that Plaintiff cannot prove the first element of his case because he has not provided evidence that he was perceived as disabled within the meaning of the Rehabilitation Act. Based on the undisputed evidence, the Court agrees. In part, Plaintiff bases his theory that his employer regarded him as disabled on Defendant's decision to grant him workplace accommodations after he requested them to accommodate purported disabilities. However, the conferral of accommodations does nothing to establish the first element of his case. Awareness

of a plaintiff's purported impairments does not establish that the employer regarded the plaintiff as disabled, "[n]or does [the employer's] allowance of accommodations establish as much." *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010). It is not reasonable to infer that an employer will modify working conditions for an employee *only if* the employer regards them as disabled under the strict meaning of the Rehabilitation Act. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004) (cited with approval in *Nyrop*, 616 F.3d 736). As the Seventh Circuit reasoned:

> Decent managers try to help employees cope with declining health without knowing or caring whether they fit the definition in some federal statute. Managers also may respond to state laws, local regulations, collective bargaining agreements, and other norms that go beyond federal law. These may create legal entitlements or practical expectations without implying anything about "disability" under the ADA.

*Id*. Holding otherwise could discourage well-meaning employers from giving accommodations to employees who are not disabled under the specific definition of the Rehabilitation Act but who would nonetheless benefit from a workplace modification, for fear of heightened obligations under federal law.

The undisputed evidence further undermines Plaintiff's conclusion that MODOC regarded him as disabled. Plaintiff points to Defendant's response to his submission of certain medical information, arguing that in a response letter, Defendant "recognized Plaintiff as having a disability." (ECF No. 58 at p. 1). However, as Defendant rightfully points out, the letter Plaintiff cites says no such thing. Defendant's ADA Site Coordinator sent Plaintiff a communication stating, without making any definitive determination, that the documentation Plaintiff submitted indicated that he *may* have a condition defined as a disability under the ADA, and as such, was welcome to submit an official request for accommodations if he needed them. Though Defendant granted Plaintiff's subsequent request for accommodations, nothing in the

letter from Defendant outlining Plaintiff's accommodations states that Defendant concluded that Plaintiff was, in fact, disabled or substantially limited in any major life activity. Further, though the record indicates that Plaintiff may have subjectively experienced symptoms of anxiety and depression in social interactions, Plaintiff has offered nothing indicating that any limitations were readily apparent to his employer. Plaintiff concedes that he maintained interactions with friends and coworkers and voluntarily applied to be a member of Defendant's Peer Action Care Team ("PACT"). Defendant points out that as a member of PACT, Plaintiff was required to show respect, understanding, and sensitivity to others, identify and respond to employees in distress, and provide support to new employees. Further, while he attempts to fault Defendant for placing him on work posts that were not listed in his accommodations, Plaintiff volunteered to be assigned to posts outside of the approved list on multiple occasions. Finally, the record indicates that Plaintiff complained about Defendant's alleged deviation from his approved accommodations only after the investigation into his unwelcome behavior was underway. On a review of the undisputed facts, Plaintiff cannot prove that he was regarded as disabled sufficient to maintain a claim of disability discrimination under the Rehabilitation Act.

**B. Alleged Comparators**

Though summary judgment is warranted based on Plaintiff's failure to establish his prima facie case, the Court finds that even if his case proceeded, Plaintiff has not adequately demonstrated disparate treatment. Thus, Plaintiff cannot show that Defendant's legitimate reason for his termination (i.e. the substantiated violation of its anti-harassment policy) was pretext for discrimination. A plaintiff may raise an inference of discrimination when the burden returns to him in the third step of the *McDonnell-Douglas* framework by offering evidence that "he was treated less favorably than similarly situated employees who are not disabled." *Lowery v.*

*Hazelwood Sch. Dist.*, 244 F.3d 654, 659 (8th Cir. 2001). To be similarly situated for purposes of disparate treatment analysis, the individuals used for comparison must have been similarly situated in all relevant respects such that they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Lindeman v. Saint Luke's Hospital of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (quoting *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014)). The test for whether another employee is similarly situated so as to serve as a relevant comparator is a "rigorous standard at the pretext stage." *Id.* (quoting *Torgerson*, 643 F.3d at 1051). When there is no record evidence regarding the alleged comparators' disability status, their treatment creates no inference of disability discrimination when compared to the plaintiff. *See Hill v. DeJoy*, Nos. 4:19-cv-345-RLW; 4:19-cv-1315-RLW, 2021 WL 4476695, at *15 (E.D. Mo. Sept. 30, 2021).

Critical to Plaintiff's disparate treatment allegation is that he was treated less favorably than employees who were not disabled or regarded as disabled. Plaintiff identified four other corrections officers who received temporary suspensions instead of termination despite committing allegedly similar misconduct. However, in his briefing in opposition to summary judgment, Plaintiff did not adequately demonstrate whether they were disabled. He merely noted that they did not have accommodations in place pursuant to the ADA. The fact of whether someone receives accommodations does nothing to establish whether they are disabled or regarded as disabled (*see* discussion *infra*). As such, the Court directed Plaintiff to provide further evidence on this point. (ECF No. 63). Plaintiff did not do so. Plaintiff revised his proffered factual allegations to state that each identified comparator was not disabled, but the evidence he cited in support of these allegations does not establish that fact. The exhibit Plaintiff

cited in support of his allegations as to the comparators' disability status is an email chain among counsel in which Plaintiff counsel requests, and Defense counsel provides, the names of "individuals [who] were granted accommodations" out of a list of employees Plaintiff provided. Whether an employee requested or received accommodations does not establish whether they were disabled or regarded as disabled. While the Court gives Plaintiff the benefit of all reasonable inferences that can be drawn from the facts, the Court must view those facts "without resorting to speculation." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004). As such, the Court cannot assume that the proposed comparators were not disabled solely because they did not have approved accommodations.

Even assuming arguendo that the proposed comparators were not disabled or regarded as disabled, Plaintiff offers minimal facts to establish that they were similarly situated in all relevant respects. In his supplemental briefing, Plaintiff points out, and Defendant admits, that the four relevant comparators shared the same job title as Plaintiff (Corrections Officer) and were disciplined under the same anti-harassment policy as Plaintiff. However, the relevant comparisons seem to end there. Plaintiff contends that the investigations into the misconduct of the four other corrections officers were conducted by the same office, but this fact is immaterial even if true. Defendant points out, with citation to the investigation reports, that the investigations of the four alleged comparators' misconduct were not conducted by the same investigator as Plaintiff, and Plaintiff offers no evidence that the same supervisor or decisionmaker imposed the suspensions that resulted. *Lindeman*, 899 F.3d at 606 (to be similarly situated, the proposed comparators "must have dealt with the same supervisor."); *see also Vaughn v. Marques*, No. 18-CV-1266 (JRT/HB), 2019 WL 2492777, at *6 (D. Minn. May 15, 2019) (collecting cases) (equal protection case, noting that in the Eighth Circuit, "where the

relevant decisionmaker is different, different individuals are not similarly situated."). Plaintiff also admits that all of the proposed comparators worked in a different facility than him at the time of the relevant misconduct. Without more, Plaintiff has not provided sufficient evidence to determine that the proposed comparators were similarly situated in all relevant respects. Thus, Plaintiff has not identified relevant comparators sufficient to establish disparate treatment indicative of pretext.

## V. CONCLUSION

For the reasons set out herein, Defendant is entitled to summary judgment on Plaintiff's claim of disability discrimination under the Rehabilitation Act. Plaintiff cannot prove the prima facie elements of a disability discrimination case because he failed to establish that Defendant regarded him as disabled and defeated his own claim of failure to accommodate by conceding that he possesses no actual disability. Further, even if Plaintiff could prove a prima facie case of disability discrimination, he would fail to carry his burden of proving pretext as he presents insufficient evidence that proposed comparators were not disabled and were similarly situated to Plaintiff in all relevant respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Missouri Department of Corrections' motion for summary judgment (ECF No. 43) is **GRANTED**.

Dated this 2nd Day of September, 2026.

John A. Ross

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE